THE STATE ex rel. FORD et al. v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

In Banc, April 30, 1921.

1. **CERTIORARI TO COURT OF APPEALS: Conflict of Opinions: Scope of Review.** On *certiorari* to review an opinion of a Court of Appeals as being in conflict with a controlling decision of the Supreme Court, the question of conflict is to be determined from the opinion of the Court of Appeals; and correlative facts on which the Court of Appeals based its ruling are referred to only as aids in more clearly understanding the court's conclusions. (WOODSON, J., dissenting.)

2. ———: ———: **Public Improvements: Contract and Bond: Conformity to Ordinance.** A contract for constructing certain sewers required that the work should be begun within ten days after the contract became binding and should be prosecuted regularly and uninterruptedly with such force as to secure its full completion within ninety working days from the date of its confirmation, the time of beginning, rate of progress and time of completion being essential conditions of the contract. Compliance with this contract was secured by a bond whereby the surety agreed with the city that the contractor would well and faithfully perform the contract, the surety not being liable beyond a sum stated equal to the estimated cost of materials used and labor done on the work, and that if the work be not begun within ten days after the contract became binding and prosecuted as provided in the contract to full completion within ninety working days from its confirmation then the surety would pay the city four dollars per day as liquidated damages for such breach of the contract. *Held*, that

the contract and bond complied with the ordinance providing for the work, which required the successful bidder to give a good and sufficient bond in a sum equal to the contract price for the construction of the sewer and laterals, "to be forfeited," if he should fail to complete the work under his contract within ninety days from the execution thereof. The Court of Appeals decision to the contrary and holding the tax bills issued for the cost of the work void for failure to give the bond required by the ordinance is quashed, as being in conflict with controlling decisions of the Supreme Court.

3. ———: ———: ———: ———: ———: Forfeiture. A city ordinance providing for the construction of sewers required the successful bidder to give a bond to secure performance of his contract, "to be forfeited" if he should fail to complete the work within ninety days from the execution of the contract. The bond as given provided that the surety should pay to the city a certain sum per day "as liquidated damages" for failure to so complete the work, not to exceed in the aggregate the estimated cost of the materials used and labor done on the work. *Held*, that the bond complied with the ordinance, inasmuch as the forfeiture required by the ordinance was not a penalty as in the criminal law, but merely a right in the city to a civil proceeding to recover from the contractor or his surety its damages at the stipulated amount per day for each day's default beyond the time, limited in the bond.

4. ———: ———: ———: ———: ———: ———: Damages. The law is settled in this State, by numerous decisions of the Supreme Court, that, in suit upon penal bonds with collateral conditions, the obligee, upon breach of condition, is not entitled to judgment for the full penalty of the bond, when a less sum is actually due; and hence the obligor can discharge himself by paying what is really due with interest and costs and thereupon the cause is discontinued.

## *Certiorari.*

RECORD QUASHED.

*Craven & Bates* for relator.

(1) The decision of the Kansas City Court of Appeals both in its literal language and by construction of its meaning is a holding that the bond contemplated by the city ordinance is a bond, the whole penalty of which would be forfeited if the work of constructing the sewer was not completed within ninety days, and in this re-

spect is contrary to the following decisions of this court. Burnside v. Wand, 170 Mo. 531; Burns v. Webster, 16 Mo. 258; St. Louis v. Parker-Washington Co., 271 Mo. 229; Foundry Co. v. Const. Co., 200 Mo. App. 33; Nichols-Shepard Co. v. Beyer, 168 Mo. App. 693; Light, Heat & Power Co. v. Independence, 188 Mo. App. 157; Buchanan v. Exposition Co., 245 Mo. 350; Cochran v. Ry. Co., 113 Mo. 364; Fidelity & Deposit Co. v. Schuchan, 189 Mo. 468; Wand v. Ryan, 166 Mo. 646; State to use v. Ruggles, 20 Mo. 100. (2) The decision is a holding that the city council cannot vary the form of bond required by ordinance to protect the city where a contract is let for constructing a public improvement paid for by tax-bills and that the city cannot insert therein provision for liquidated damages and is contrary to the decision of the Supreme Court of this State. St. Louis v. Von Phul, 133 Mo. 567; Heman v. Gillian, 171 Mo. 258; Sheehan v. Owens, 82 Mo. 450. (3) The decision of the Court of Appeals holds that where an ordinance provides that the construction of the sewer must be completed within ninety days from the date of the contract for building the sewer and that a bond shall be given that will be forfeited if the sewer is not completed within time, and where the city then enters into a contract and bond contained in the same document both with provisos that the contractor shall be liable for liquidated damages if the work is not completed within the time specified—that in such case the tax-bills are not rendered void by the clause in the contract providing for liquidated damages but are so rendered by other clauses in the same document defining the liability of the bondsmen.   In this holding a decision of the Court of Appeals is contrary to the decisions of this court in the case of: Gist v. Const. Co., 244 Mo. 389; Excelsior Springs v. Ettenson, 120 Mo. App. 215.

*Culver, Phillip & Voorhees* for respondents.

WALKER, C. J.—*Certiorari* to quash the record of the Kansas City Court of Appeals.  A judgment on certain

sewer tax-bills had been rendered in the circuit court in favor of relators and against the Excelsior Springs Light & Water Company. Upon an appeal this judgment was reversed by the Court of Appeals. Its rulings are alleged to contravene certain decisions of the Supreme Court. The core of the controversy is in the difference between the terms of the ordinance authorizing the work and those of the contract and bond for the faithful performance of same. This is, of course, to be determined from the opinion; correlative facts on which the Court of Appeals bases its ruling are referred to only as aids in more clearly understanding the Court's conclusions.

*Statement.*

The ordinance, so far as concers the matter at issue, provides that the ''successful bidder shall give a good and sufficient bond in a sum equal to the contract price for the construction of the sewer and laterals, to be forfeited if he shall fail to complete the work of constructing the said district sewer and laterals under his contract within ninety days from the execution thereof.''

The contract provides that: ''6. The work embraced in this contract shall be begun within ten days after the contract binds and takes effect and shall be prosecuted regularly and uninterruptedly thereafter with such force as to secure the full completion within ninety working days from the date of its confirmation, and the time of beginning, rate of progress and time of completion being essential conditions to this contract. And if the contractor shall fail to complete the work within the time above specified, an amount equal to the sum of four and no/100 dollars per day for each and every day thereafter, until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work.''

The bond, which is embodied in the contract, wherein the contractors were the parties of the first part, a liability company, as surety, was the party of the second part, and the City of Excelsior Springs was party of the third part, is, so far as relevant here, as follows:

"Said party of the second part hereby guarantees that the said party of the first part will well and truly perform the covenants hereinbefore contained; to pay for the work and all labor of all laborers and teamsters, teams and wagons, employed on the work, and for all materials used therein or any part thereof which shall not be paid for by said first party within ten days after the money for such work, labor and materials becomes due and payable, and this provision shall entitle any or all laborers and teamsters and owners of teams and wagons who may do work, and parties who may furnish materials on or for the improvements to be done under this contract, to sue and recover from the said second party, by said first party; but said second party shall not be liable on this guarantee on account of materials used and labor done upon said work beyond the sum of thirty-four hundred forty and 25/100 ($3,440.25) dollars, the estimated costs of materials used and labor done upon said work. And the said party of the second part hereby agrees with the city of Excelsior Springs that the said party of the first part will well and faithfully perform each and all of the terms and stipulations in the foregoing contract to be done, kept and performed on the part of the said first party, but said party of the second part shall not be liable hereon beyond the sum of thirty-four hundred forty and 25/100 ($3,440.25) dollars.

"And the said party of the second part hereby further agrees with the city of Excelsior Springs, that if the work embraced in the contract be not begun within ten days after this contract binds and takes effect, and prosecuted regularly and uninterruptedly, thereafter in accordance with the terms and provisions thereof with such force as to secure its full completion within ninety working days from the date of its confirmation, they will pay to the city of Excelsior Springs the sum of four and no/100 dollars per day, as liquidated damages for such breach of this contract."

More briefly stated, under the ordinance it is provided in general terms that a forfeiture of the bond is

to follow a failure to perform the work within the time stipulated; while, under the contract, of which the bond is a part, the provisions as to the forfeiture are specifically stated in that the liability company as surety for the contractors binds itself to hold the city of Excelsior Springs harmless from all the defaults of the contractors therein specified, in a sum not exceeding the total contract price, except as to the time within which the work is to be performed; as to this, if the limitation is exceeded, for each day the contractors are in default the surety agrees to pay the city of Excelsior Springs four dollars as liquidated damages.

The work contemplated was completed within the time stipulated and in other respects it met the full measure of the contractors' obligation. There is no ground for complaint, therefore, arising between the contracting parties. The malcontent in the original action whose rights the Court of Appeals attempted to determine was a local corporation which refused to pay its proportionate part of the expense incurred in this undertaking, which expense was levied in the form of sewer tax-bills. The improvement effected was one of public necessity, uniformly recognized in all centers of population as promotive of health. While this fact should not and will not control in the interpretation of the Court of Appeals opinion, other than as authorized by its unmistakable terms, the nature of the transaction cannot but cause the reviewer to look upon it with no unkindly eye and to scrutinize with discriminating care any construction the result of which will be to destroy the benevolent purpose intended. This does not mean that the rights of individuals are to be disregarded, but that a wise discretion such as is always present when the law is properly administered, shall be exercised in determining the limit of their protection, which should not be extended except in the presence of an unfair burden illegally imposed.

The portions of the opinion immediately pertinent to the matter at issue are as follows:

"The contractor gave a bond in the sum of the contract price, but it did not provide that it should be forfeited if the work was not completed within ninety working days, but it provided that if it was not completed within that time $4 per day should be paid to the city as liquidated damages for each day over the ninety days that the work was not completed. . . . But we think there is merit in the contention that there was no bond given that the work should be completed within ninety days, and that if the work was not completed within that time the bond should be forfeited. The provisions of the bond were that it should not be forfeited, but that only $4 per day should be paid for each working day that the work was not completed after ninety days. The council passing the ordinances authorizing the work regarded it as material that the work should be completed within ninety days, and in order to be assured that the work would be completed in that time provided that a bond should be given to that effect, and if the work was not so completed the bond should be forfeited."

I.   Under the issue presented we are concerned only with the part of the bond to which the foregoing excerpt refers.   The other parts are in compliance with the general law regulating contracts for public work. [Sec. 1247, R. S. 1909, sec. 1040, R. S. 1919.]   A right of action for a breach of either of these is **Public Improvements: Contract and Bond: Conformity to Ordinance.** not affected by the presence of the others in the instrument; the validity of either is to be determined by its own terms.   If those terms are in substantial compliance with the law in that they contravene no statute, are not in violation of public policy and import a valid consideration, their variance in verbiage from the statute or ordinance upon which they are based will not render the obligation nugatory and hence militate against its enforcement.   [State ex rel. Fisher v. Rodecker, 145 Mo. 450; State ex rel. Lafayette Co. v. O'Gorman, 75 Mo. l. c. 378; State ex rel. West v. Thompson, 49 Mo.

287 Mo.—44

l. c. 189; Gathwright v. Callaway County, 10 Mo. 664; Grant v. Brotherton's Admr., 7 Mo. 458; Barrett v. Stoddard County, 183 S. W. l. c. 647.] It is the subject-matter as indicative of the purpose and not the mere form that the court looks to in construing the terms of an obligation as at bar. [Henry County v. Salmon, 201 Mo. l. c. 152; Wimpey v. Evans, 84 Mo. 144; State ex rel. McKown v. Williams, 77 Mo. l. c. 470; Newton v. Cox, 76 Mo. l. c. 354; Flint ex rel. v. Young, 70 Mo. l. c. 225; State to use Cameron v. Berry, 12 Mo. 377.] Here the validity of the bond is assailed not on account of its different conditions but its variance from the ordinance which it is contended is such as to make the entire obligation void. This conclusion does not follow, even if it be conceded that the condition as to the time limit of performance is invalid. The binding obligations of the other conditions would not thereby be affected authorized as they are by the statute and drawn in conformity therewith. In ruling therefore as to the invalidity of the entire bond by reason of the alleged variance of one of the conditions from the tenor of the ordinance, the Court of Appeals either inadvertently or otherwise ignores the other conditions, and in so doing contravenes the cases above cited. However, giving immediate consideration to the condition in controversy, there is no such variance between it and the ordinance as to affect the obligations of the bond. For immediate reference we repeat that the ordinance authorizes a forfeiture of the bond upon a failure to perform the work within ninety days, while the bond prescribes that the work shall be begun within ten days after the execution of the contract and prosecuted with such force as to secure its completion within ninety days; and if not so completed the contractors and surety will pay to the city of Excelsior Springs four dollars per day for each day's default. From this it will be seen, without quibbling with words in attempting to make more clear that which is already clear, that the mandatory obligation of the bond as to the time of the completion of the work is the same in effect as that of the ordinance.

II.  The only remaining ground for controversy is what is meant by a forfeiture of the bond.  The meaning of similar terms in statutes and ordinances as defined in the rulings of courts of last resort in other jurisdictions, while not determinative of the question of the contravention of opinions here involved, are not inappropriately cited to show that the current of authority is uniform on this subject, and, as we will show, is in accord with our own rulings.  In United States v. Distillery at Spring Valley, 25 Fed. Cases, 854, the court said the words "shall forfeit as used in the Act of Congress, March 31, 1868 (15 Stat. 59), declaring that a distiller operating without a license shall forfeit his distillery and distilling apparatus, means that they shall be subject to forfeiture."

*Bond: Forfeiture.*

The Supreme Court of Vermont in Woodcock v. Bolster, 35 Vt. 632, held that where the word forfeit is used it is usually construed to mean a cause of forfeiture requiring some judicial proceeding to effect it.

The Court of Appeals of Indiana in Barber-Asphalt Co. v. City of Wabash, 43 Ind. App. 167, held that when a contract for the improvement of a city street provided for its completion at a certain date and for a failure the contractor was to pay a forfeit of $25 per day as liquidated damages until the completion of the work, that while the word forfeit usually means a penalty the damages will be considered liquidated regardless of whether the city suffered actual damages.

The Supreme Court of Texas in Galveston Ry. v. State, 81 Tex. 572, in construing a statute of that State (Sec. 4280, R. S. Tex.) which provides that if a railroad company fails to file its annual report it shall forfeit its charter, was intended to prescribe the ground of forfeiture which the state could enforce by a judicial proceeding.

Under our own rulings and those of the Courts of Appeals the word forfeit as used in criminal law is equivalent to a fine; but when used in a civil proceeding in connection with the enforcement of a civil right it

contemplates an ordinary civil judgment, having nothing peculiar in its nature. [State ex rel. Stinger v. Kruger, 280 Mo. 293; Edwards v. Brown, 67 Mo. 377; Ex parte Alexander, 39 Mo. App. l. c. 109; Greene County to use v. Wilhite, 29 Mo. App. l. c. 466.] The language of the ordinance, therfore, in requiring a forfeiture of the bond upon a failure of the contractor to comply with the prescribed time limit in the completion of the work was not employed in the strict sense of a penalty as in criminal law, but in a definitive manner to afford the city the right to a civil proceeding to recover from the contractor or his surety the stipulated amount per day for each day's default beyond the time limited in the bond.

While it would have been a loose and irregular manner for a municipality to have contracted for public wark in simply requiring a bond in the general language of an ordinance, the right of action on such an obligation would have differed in no material particular from that authorized under the present bond except as to the manner of determining damages. In the one case the right of recovery would have been limited to proof of the damages actually sustained, while in the other that right would have been measured by the number of days the contractor was in default, the sum stipulated as a penalty to be taken as a unit in estimating the total. Under either there would have been such a forfeiture of the bond as is meant by the ordinance and is authorized by law but not such as is held to have been required by the Court of Appeals opinion. Ordinances authorizing work of the character here under review are usually couched in general terms, leaving the conditions of the contract and bond to be specified by the parties. The necessities of the case demand this latitude in the effective discharge of the duties devolving upon municipal authorities in the letting of public work whose rights and powers in regard thereto are not limited to those expressly granted but include such implied powers as are necessary to carry into full force and effect those expressly granted. As was well said in City St. Louis v.

Von Phul, 133 Mo. 567: "The power to make improvements and to let contracts therefor and to exact of the contractor a bond for the faithful performance of his contract, necessarily implies the power to do everything necessary for the faithful performance of the work, for the protection of the city and its citizens, and for the securing of the best and lowest possible bids. Indeed, we are unable to conceive of any matter of detail incident to the contract and the work that the city might not require that a private person could require."

In ruling, therefore, that the bond given illegally extended the powers granted the municipal authorities under the ordinance and thus prevented competitive bidding for the work, the Court of Appeals ran counter to the Von Phul and other cases of like character.

III. It is difficult to determine from the opinion of the Court of Appeals what is held therein to be the limit of the obligee's right of recovery upon a breach of the condition of a bond drawn in the language of the ordinance alone. We have shown that if it be meant by this ruling that such right is to be limited **Damages.** to a recovery of the actual damages sustained, an adequate remedy is afforded by the bond given; and, hence, the contention as to the invalidity of same must go for naught.

If, however, it is meant that the obligee is to be entitled to a different right of recovery, the ruling is in direct conflict with numerous decisions of this court. [State ex rel. Cochran v. Cooper, 79 Mo. l. c. 467; State to use Gates v. Fitzpatrick, 64 Mo. 185; State to use Reyburn v. Ruggles, 20 Mo. 99.] The rule has never been recognized in this State that the obligee upon the breach of a condition was entitled to a judgment for the full penalty of a bond when a less sum was actually due. As was said in Burnside v. Wand, 170 Mo. l. c. 560: "Our law is opposed to forfeitures. It has ever been considered unconscionable to demand the full penalty when a lesser sum is actually due. Hence, it has ever been the law in our State that in suits upon penal bonds the

ob'igor can discharge himself by paying what is really due with interest and cost, and thereupon the cause is discontinued.''

IV. Summarizing what has heretofore been said: the rule announced in Barber-Asphalt Co. v. Munn, 185 Mo. 552, and other cases declaratory of the same doctrine, as to the supervening control of an ordinance in determining the time within which the work is to be performed can have no application here. The time limit in the contract and .bond was identical with that prescribed in the ordinance. Furthermore, the language of the ordinance being general, the provision in the contract and bond defining the manner in which the damages were to be determined did not exceed the implied power of the municipal authorities in contracting for the performance of the work but constituted a wise and necessary exercise of same. The rule limiting the powers of municipalities in contracting for public work to the terms of ordinances applies only when the latter contain specific provisions in regard to the work contracted for and necessary to secure its performance as exemplified in State v. Butler, 178 Mo. 272; Heman Const. Co. v. Lyon, 277 Mo. 628.

*Summary.*

From all of which the conclusion is authorized that the opinion of the Court of Appeals contravenes decisions of this court in the particulars stated and that its record should be quashed. It is so ordered. All concur except *Woodson, J.,* who dissents in separate opinion.

WOODSON, J. (dissenting).—The majority opinion states that: ''A judgment in certain sewer tax-bills had been rendered in the circuit court in favor of relators against the Excelsior Springs Light & Water Co. Upon appeal this judgment was reversed by the Court of Appeals. Its rulings are alleged to contravene certain decisions of the Supreme Court. The core of the controversy is in the difference between the terms of the ordinance authorizing the work and those of the con-

tract and bond for the faithful performance of same. *This is, of course, to be determined from the opinion."* (Italics are mine).

I dissent from the italicized words, for this reason: That the facts of the case, as presented to this court, are only preserved in the record made by the circuit court and filed in the Court of Appeals. That is where the Court of Appeals must look for the facts of the case, and this court must likewise look there for them.

In *certiorari* proceedings the writ of this court commands the lower court to send up to this court the entire record of the lower court. That was done in this case, and is now before us, together with the opinion of the Court of Appeals written therein.

Under the laws and Constitution, the decisions of this court are the supreme laws of the State, and in order that there may be no conflict between the decisions of this court and those of the various courts of appeals, the Constitution provides that this court may order any of the various courts of appeals to send up the record in any case where there is a contention properly made, that there is a conflict between the rulings of that court and those of this court. The object of the constitutional provision being perfectly clear, namely: that there may be no conflict between the decisions of this court and those of those courts, or in other words, that the law as decided by those courts must be kept in harmony with those of this court, which declares the supreme law of the State, otherwise we should have two or more courts announcing conflicting rules as contituting the supreme law of the State, and thereby decide one case, upon a given state of facts, in favor of one person, and in another case, upon the same state of facts, in favor of another, in a different way.

Now the facts of the case are preserved in the record sent up to the Court of Appeals by the circuit court, and upon those facts the Court of Appeals predicates its opinion, and its opinion constitutes no part of the record sent up to it by appeal or upon writ of error to the

circuit court and the Court of Appeals must base its opinion upon the facts so sent up to it by the circuit court, and if it does so, and follows the decisions of this court, in declaring the law applicable to those facts, then its opinion is just as much a part of the supreme law of the State as are the decisions of this court, but if the Court of Appeals misstates the facts of the record as sent up to it by the circuit court, or omits to state any of the material facts thereof, and on that account, decides the case in harmony with the decisions of this court, but which would have contravened the ruling of this court had the facts been correctly or fully stated, then clearly that decision of the Court of Appeals would contravene the rulings of this court, that is, if in fact this court had passed upon a case which was the same as that presented to the Court of Appeals, by the record sent up to it by the circuit court. In other words, the Court of Appeals has no legal authority to garble the record of the circuit court, and thereby misstate the facts or omit certain material facts appearing in that record, and thereby make it appear that its opinion is either in harmony with the decisions of this court, or was not in conflict with any of our decisions. Such an opinion, however innocently rendered by the Court of Appeals, is both a palpable fraud upon the jurisdiction of this court, and upon the legal rights of the litigants to that suit, and amounts to judicial robbery, however innocent the Court of Appeals may be in its delivery. Such an opinion is nothing but polished brass, it may glitter and sound all right, but it is not pure gold, as the true basis of all judicial opinions should and ought to be, otherwise the basis of the opinion is a whited sepulcher, filled with dead men's bones, an outrage upon the law, equity and justice, and betrays the weakness and inefficiency of the courts in dealing with the affairs of men.